IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KEVIN DONNELL MURPHY,

*Plaintiff*,

v.                                                          Civil No.: 1:24-cv-00325-JRR

BRANDI STOCKSDALE, *et al.*,

*Defendants*.

## MEMORANDUM OPINION

This matter comes before the court on Defendants Brandi Stocksdale and the unidentified Baltimore City Department of Social Services employees' Motion to Dismiss Complaint.  (ECF No. 24; the "Motion.")  The court has reviewed all papers; no hearing is necessary.  Local Rule 105.6 (D. Md. 2025).  For the reasons that follow, by accompanying order, the Motion will be granted.

## I.    BACKGROUND[1]

As the court explained in its memorandum opinion at ECF No. 16, this consolidated action arises from the termination of Plaintiff's Supplemental Nutrition Assistance Program ("SNAP") benefits for his purported failure to submit necessary paperwork, despite Plaintiff having "submit[ed] all required documentation through the Maryland State Department of Health and Human Services online platform."[2]  (ECF No. 1-1 at p. 2.)  Plaintiff avers that his SNAP benefits

---

[1] For purposes of resolving the Motion to Dismiss, the court accepts as true all well-pled facts set forth in the Complaint and supplements thereto.  (ECF Nos. 1, 34–36.)  *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017); *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).

[2] The member case in this action raises the same claim at issue in the lead case, but was instead brought against Craig Fader and, as in the lead case, unidentified employees of the Department.  After consolidation, the court dismissed this action as against Fader by memorandum opinion and order at ECF Nos. 16 and 17.  The court's analysis herein concerns Defendant Stocksdale and all unidentified Department employees listed as Defendants.  Dismissal encompasses the consolidated case in full.

were suspended "without affording [him] a fair and impartial hearing" in violation of the United States Constitution. *Id.* at p. 3. Plaintiff alleges that a week before his SNAP benefits were terminated, he received correspondence informing him that he could contest the termination of his benefits by "proactively schedul[ing] a court date." *Id.* at p. 2. Plaintiff's Supplement to his Complaint shows that his SNAP benefits were not recertified because he purportedly failed to satisfy a necessary requirement (submission of a Benefit Review Form) for recertification. (ECF No. 36-3 at pp. 5–6.)

The Fourth Circuit has recently detailed the relevant framework for such benefits, explaining:

> This case involves benefits—colloquially referred to as food stamps—under the Supplemental Nutrition Assistance Program. The food stamps program is administered by the states and provides benefits to qualified recipients under a formula that considers the number of people living in the household and the total income available to the household. *See generally* 7 U.S.C. § 2014; 7 C.F.R. § 273.10. Benefits are paid for a specified period of time, known as a "certification period." 7 U.S.C. § 2012(f). The certification period generally may not exceed 12 months, and benefits terminate automatically at the end of the certification period. *See* 7 C.F.R. § 273.14(a) ("No household may participate beyond the expiration of the certification period assigned in accordance with § 273.10(f) without a determination of eligibility for a new period."). As the end of the certification period approaches, the state agency notifies recipients that their benefits are expiring and informs them they must submit an application with certain required information to be recertified for benefits. *See* 7 U.S.C. § 2020(e)(4); 7 C.F.R. § 273.14(b).

*Hedgepeth v. Nash Cnty.*, No. 24-1638, 2025 WL 1303953, at *1 (4th Cir. May 6, 2025). Relevant here, the end of Plaintiff's certification period—the date upon which his SNAP benefits would be terminated—was May 31, 2023. (ECF No. 36-3 at pp. 5–6.)

Plaintiff initiated the instant action on February 1, 2024. (ECF No. 1.) Plaintiff's Complaint does not set forth any specific counts. Affording the Complaint liberal construction,

the court construes Plaintiff's action as one brought pursuant to 42 U.S.C. § 1983 for alleged violation of his right to procedural due process under the Fourteenth Amendment. *See* 42 U.S.C. § 1983 ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . ."); U.S. CONST. AMEND. XIV (prohibiting States from "depriv[ing] any person of life, liberty, or property, without due process of law").

Plaintiff seeks the following relief: "arrest of individuals who violated due process," "certified copies of each individual's oath of office and surety bond," monetary (compensatory) damages, and punitive damages. (ECF No. 1-1 at p. 4); *see also* ECF Nos. 34, 35, 36 (detailing Plaintiff's request for compensatory and punitive damages, as well as litigation costs and fees and taxes). Plaintiff's Complaint references the concept of "Injunctive Relief," but does not request any specific injunctive relief. (ECF No. 1-1 at p. 4.)

On March 7, 2025, Defendants Brandi Stocksdale, Director of the Baltimore City Department of Social Services (the "Department"), and unidentified employees of the Department,[3] filed the instant Motion, seeking dismissal of Plaintiff's Complaint. (ECF No. 24.) Plaintiff opposes the Motion. (ECF No. 26.)

## II.    LEGAL STANDARDS

### A. Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016).

---

[3] The court previously dismissed this action as against Craig Fader. (ECF Nos. 16, 17.)

"The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 176 (D. Md. 2019) (citing *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999)). "In determining whether jurisdiction exists, 'the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue.'" *Id.* at 176 (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003)).

Subject matter jurisdiction challenges may proceed in two ways: "either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same). Conversely, in a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192. "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).

Here, Defendants bring a facial challenge to this court's jurisdiction. They assert that Eleventh Amendment immunity bars Plaintiff's action against them in their official capacities. (ECF No. 27-1 at 8–9.) As the Fourth Circuit explained in *Cunningham v. General Dynamics*

*Information Technology*, "sovereign immunity deprives federal courts of jurisdiction to hear claims, and a court finding that a party is entitled to sovereign immunity must dismiss the action for lack of subject-matter jurisdiction."  888 F.3d 640, 649 (4th Cir. 2018) (quoting *Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009))

### B. Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint."  *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)).  To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'"  *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible."  *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570).  The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully.'"  *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d

186, 193 (4th Cir. 2009)).  Reliance on "labels and conclusions" and "a formulaic recitation of the

elements of a cause of action" are insufficient.[4]  *Twombly*, 550 U.S. at 555.

III.    <u>ANALYSIS</u>

As an initial matter, the court is ever mindful that *pro se* filings "must be construed

liberally, . . . so as to do substantial justice," and are held to less stringent standards that filings

drafted by lawyers.  *Elijah v. Dunbar*, 66 F.4th 454, 460 (4th Cir. 2023) (quoting *Erickson v.

Paradus*, 551 U.S. 89, 94 (2007); FED. R. CIV. P. 8(f); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

"In practice, this liberal construction allows courts to recognize claims despite various formal

deficiencies, such as incorrect labels or lack of cited legal authority."  *Wall v. Rasnick*, 42 F.4th

214, 218 (4th Cir. 2022).  Such liberal construction, however, does not absolve Plaintiff from

pleading a plausible claim, and this court "may not act as an advocate for a self-represented

litigant" by "conjur[ing] up" issues not presented.  *Desgraviers v. PF-Frederick, LLC*, 501 F.

Supp. 3d 348, 351 (D. Md. 2020) (quoting *Bey v. Shapiro Brown & Alt, LLP*, 997 F. Supp. 2d 310,

314 (D. Md. 2014), *aff'd*, 584 F. App'x 135 (4th Cir. 2014); *Beaudett v. City of Hampton*, 775

F.2d 1274, 1278 (4th Cir. 1985)).

A.  **Individual or Official Capacity Action**

The court first considers whether this action is brought against Defendants in their official

and/or individual capacities.  Plaintiff's Complaint does not so specify.  (ECF No. 1.)  "[W]hen a

plaintiff does not allege capacity specifically, the court must examine the nature of the plaintiff's

---

[4] Plaintiff attaches exhibits to his opposition to the Motion, including correspondences he sent to Defendant Stocksdale (and former Defendant Fader).  (ECF Nos. 26-1, 26-2.)  The court declines to consider these in ruling on Defendants' Motion.  In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside of a complaint.  It may only consider documents that are "integral and relied upon in the complaint," *see Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021), documents explicitly incorporated in the complaint, *see Goines v. Valley Comm. Svcs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016), and matters of public record of which this court may take judicial notice, *see Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015).  No exception is applicable here.  Similarly, the court does not consider exhibits relevant to Defendants' jurisdictional arguments.

claims, the relief sought, and the course of proceedings to determine whether a state official is

being sued in a personal capacity." *Biggs v. Meadows*, 66 F.3d 56, 61 (4th Cir. 1995). "[T]he

underlying inquiry remains whether the plaintiff's intention to hold a defendant personally liable

can be ascertained fairly." *Id.*

As the court detailed in its memorandum opinion at ECF No. 16, it appears plain that

Plaintiff brought this action against Defendant Stocksdale in her official capacity. This is apparent

from the manner in which Plaintiff identifies and names Stocksdale in his pleadings ("Director"

and "Secretary of Health and Maryland, Department"), the nature of the allegations (Plaintiff

alleges no individual action by Stocksdale), and the manner of service (noting Stocksdale "serves

as Director" and utilizing the Department's address), *see* ECF No. 20. The court is not persuaded

that Plaintiff intended to bring this action against Stocksdale in her individual capacity. While

Plaintiff's opposition suggests, but does not state, that this is an official and individual capacity

suit, "the mere incantation of the term 'individual capacity' is not enough to transform an official

capacity action into an individual capacity action." *Adams v. Ferguson*, 884 F.3d 219, 225 (4th

Cir. 2018) (quoting *Lizzi v. Alexander*, 255 F.3d 128, 137 (4th Cir. 2001)).

The court acknowledges that Plaintiff seeks relief (compensatory and punitive damages)

that may suggest his claims are brought against Defendant Stocksdale in her individual capacity,

but this is not compelling for two reasons. First, the nature of his claims does not support a finding

that Plaintiff asserted this action against Stocksdale in her individual capacity—no factual

allegation relates to Stocksdale or her actions. *Cf. Murphy v. Virginia*, No. 21-1253, 2022 WL

17484286, at *2 (4th Cir. Dec. 7, 2022) (finding that the district court erred in determining that a

plaintiff's individual capacity claims were barred where he had sought both compensatory and

punitive damages and alleged actions directly attributable to the individual defendant). And

second, Plaintiff also brings this action against unnamed Defendants who seemingly may provide

the basis for the monetary damages he seeks.

Accordingly, even under the liberal construction afforded *pro se* filings, the court is not

persuaded that Plaintiff intended to bring this action against Stocksdale in her individual capacity

where he has made no allegation of individual actions by Stocksdale.[5]  However, in view of the

foregoing, and out of an abundance of caution and affording Plaintiff's pleadings liberal

construction, the will consider his claim against unidentified Department employees as brought

against them in their individual capacities.

## B.  Eleventh Amendment Immunity

The court now turns to Defendants' argument that this action should be dismissed against

them in their official capacities because Plaintiff's § 1983 claim is barred by Eleventh Amendment

immunity.[6]  (ECF No. 24-1 at pp. 5–8.)  The Eleventh Amendment provides that "the Judicial

---

[5] For these same reasons, as well as for the reasons set forth later in this opinion, even were the court to construe this action as against Defendant Stocksdale in her individual capacity, it would be subject to dismissal for failure to state a claim because Plaintiff does not allege any actions or involvement by Stocksdale pertinent to Plaintiff's claims.

[6] "The phrase 'Eleventh Amendment immunity' is often used . . . as a 'convenient shorthand' for state sovereign immunity," though the phrase "is something of a misnomer." *Jackson Creek Marine, LLC v. Maryland*, 153 F.4th 423, 430 n.5 (4th Cir. 2025) (quoting *Alden v. Maine*, 527 U.S. 706, 713 (1999)).  "Cases that use the phrase 'Eleventh Amendment immunity' are generally understood as speaking about state sovereign immunity more broadly."  *Id.*  On this point, the Fourth Circuit further explains:

> [L]ater cases confirm that the Eleventh Amendment does not "memorializ[e] the full breadth of the sovereign immunity retained by the States." *Fed. Mar. Comm'n*, 535 U.S. at 753, 122 S.Ct. 1864. Rather, the amendment is "but one particular exemplification of that immunity." *Id.* That is why a state enjoys sovereign immunity when sued by its own citizens, even though the Eleventh Amendment says nothing about such suits. *See Hans*, 134 U.S. at 14–15, 10 S.Ct. 504 (calling it "almost an absurdity on its face" to imagine that a state could be sued by its own citizens but not by other states' citizens). To think that the scope of state sovereign immunity "rest[s] on the words of the Amendment alone" is to engage in "ahistorical literalism." *Alden*, 527 U.S. at 730, 119 S.Ct. 2240.

> Rather than deriving from the Eleventh Amendment, state sovereign immunity derives "from the structure of the original Constitution itself." *Id.* at 728, 119 S.Ct. 2240. The states were sovereign before they joined to become the United States, and they "entered the federal system with their sovereignty intact." *Blatchford v. Native Vill. of Noatak*, 501 U.S. 775, 779, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991).

power of the United States shall not be construed to extend to any suit in law or equity, commenced

or prosecuted against one of the United States by Citizens of another State, or by Citizens or

Subjects of any Foreign State." U.S. CONST. AMEND. XI. Under the Eleventh Amendment, states

generally enjoy immunity from suit by private individuals in federal court unless a state waives its

immunity, or the immunity is abrogated by Congress. *See Bd. of Tres. v. Garrett*, 531 U.S. 356,

363–64 (2001) ("The ultimate guarantee of the Eleventh Amendment is that nonconsenting States

may not be sued by private individuals in federal court." (citations omitted)). At issue here,

"[l]awsuits against state officials in their official capacities, . . . are the equivalent of suits against

the state itself."[7] *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 167 (D. Md.

2022); *see Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (recognizing same);

*Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax Cnty., Virginia*, 355 F. Supp. 3d

386, 399–400 (E.D. Va. 2018) ("[B]ecause a state official sued in his official capacity stands in

for the entity he represents, he is equally entitled to assert that entity's sovereign immunity from

suit."). As explained *supra,* a finding that a defendant enjoys sovereign immunity on a claim

presents a jurisdictional bar to the court's adjudicative power over such a claim. *Cunningham v.*

*General Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018).

A limited exception to Eleventh Amendment immunity exists pursuant to *Ex parte Young*.[8]

Indeed, "suits for 'prospective injunctive relief against state officials acting in violation of federal

---

*Id.* at 429–30 (4th Cir. 2025).

[7] Eleventh Amendment immunity also extends to suits brought against an instrumentality of the state. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment.").

[8] In addition to the *Ex parte Young* exception, the Fourth Circuit has identified two other exceptions to the Eleventh Amendment's prohibition on suits against states, including where Congress abrogates the state's Eleventh Amendment immunity and where the state waives its Eleventh Amendment immunity. *See Doe v. Cmty. Coll. of Baltimore Cnty.*, 595 F. Supp. 3d 392, 409 (D. Md. 2022) (citations omitted). Plaintiff does not argue, and the court does not discern, that any other exception is applicable here. *See Biggs v. N. Carolina Dep't of Pub. Safety*, 953 F.3d 236, 241 (4th Cir. 2020) (recognizing that "Congress has not abrogated sovereign immunity for § 1983 suits"); *Pevia v. Hogan*, 443 F.

law' are permitted" pursuant to the *Ex parte Young* exception. *Eller v. Prince George's Cnty. Pub. Sch.*, 580 F. Supp. 3d 154, 168 (D. Md. 2022) (citing *Ex parte Young*, 209 U.S. 123 (1908)). "Under this limited exception, a federal court may issue prospective, injunctive relief against a state official to prevent ongoing violations of federal law, such as when the state officer is enforcing, or threatening to enforce, an allegedly unconstitutional state law." *Id.* The exception "'does not apply when the alleged violation of federal law occurred entirely in the past,' but applies when '(1) the violation for which relief is sought is an ongoing one, and (2) the relief sought is only prospective.'" *Wicomico Nursing Home v. Padilla*, 910 F.3d 739, 747 (4th Cir. 2018) (citations omitted); *see Albert v. Lierman*, 152 F.4th 554, 560–61 (4th Cir. 2025) (noting that "*Ex parte Young* . . . applies only when a complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective" (citations omitted)). "Relief that operates retroactively, as a 'form of compensation' for injuries suffered before a federal court ruling, remains barred." *Albert*, 152 F.4th at 561 (quoting *Edelman v. Jordan*, 415 U.S. 651, 668 (1974)). In determining the application of the *Ex parte Young* exception, the court "need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (quoting *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997)).

Application of the *Ex parte Young* exception requires "a 'special relation' between the officer being sued and the challenged" state action. *McBurney v. Cuccinelli*, 616 F.3d 393, 399 (4th Cir. 2010) (first quoting *Ex parte Young*, 209 U.S. at 157; then quoting *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 331 (4th Cir. 2001)). "This requirement of '*proximity to* and

---

Supp. 3d 612, 632 (D. Md. 2020) (noting that Maryland "has not waived its immunity under the Eleventh Amendment to suit in federal court").

*responsibility for* the challenged state action,' . . . is not met when an official merely possesses '[g]eneral authority to enforce the laws of the state.'" *Id.* (emphasis in original) (quoting *S.C. Wildlife Fed'n v. Limehouse,* 549 F.3d 324, 333 (4th Cir.2008)); *see King v. Youngkin*, 122 F.4th 539, 548 (4th Cir. 2024), *cert. denied sub nom. O'Bannon v. King*, 145 S. Ct. 2815 (2025) (same). The official "must be able to enforce, if he so chooses, the specific law the plaintiff challenges." *Virginia Coal. for Immigrant Rts. v. Beals*, 803 F. Supp. 3d 454, 470 (E.D. Va. 2025) (quoting *King*, 122 F.4th at 549).

As mentioned earlier, although Plaintiff refers to "injunctive relief" in his Complaint, his Complaint does not describe or identify any specific injunctive relief sought. (ECF No. 1-1 at p. 4.) Indeed, his subsequent filings that repeatedly detail the relief he seeks make no mention of prospective or injunctive relief, and do not describe any relief that might call for prospective, mandatory, or prohibitive injunctive relief. (ECF Nos. 34, 35, 36.) On this aspect alone, the *Ex parte Young* exception is plainly inapplicable.[9]

Nonetheless, in opposition, Plaintiff attempts to frame this action as one seeking prospective relief because he seeks to "rectify the ongoing issues related to the SNAP benefits termination," but he mistakes the point. (ECF No. 26 at p. 1.) First, such relief is "backwards-looking" and would similarly fail to trigger the exception because it seeks "to retrospectively redress past state actions." *See Patterson v. Lamonte*, No. 24-2812-BAH, 2026 WL 279033, at *5 (D. Md. Feb. 3, 2026). Moreover, while he seeks to "rectify" the termination, he seemingly does so through his repeated requests for compensatory and punitive damages, which plainly fall outside

---

[9] As the court explained in its prior memorandum opinion at ECF No. 16, to the extent Plaintiff's response to the Motion attempts to amend his Complaint, Plaintiff's attempts are not permissible. *See, e.g., Nat'l Ass'n for Advancement of Colored People v. Bureau of Census*, 382 F. Supp. 3d 349, 377 n.17 (D. Md. 2019) (noting that an opposition to a motion to dismiss "is not a vehicle for amending a complaint"); *Whitten v. Apria Healthcare Grp., Inc.*, No. PWG-14-CV-3193, 2015 WL 2227928, at *6 (D. Md. May 11, 2015) (explaining that it is "axiomatic" that a complaint may not be amended by briefs in opposition).

of the scope of *Ex parte Young*.  Finally, Plaintiff alleges no facts upon which the court may reasonably infer that Defendants have the necessary specific relationship with the state such that they have or bear responsibility for the challenged state action (and the ability to effect any sort of injunctive relief, *e.g.*, to cure the denial of his certification).  *See McBurney*, 616 F.3d at 399, *supra*.  More simply, based on his allegations, Plaintiff seeks relief from the Department, not the individual state officials.  *See MediGrow, LLC v. Natalie M. LaPrade Med. Cannabis Comm'n*, 487 F. Supp. 3d 364, 373 (D. Md. 2020) (noting that the *Ex parte Young* exception "only permits actions against state officials, not the State itself or its instrumentalities").

Accordingly, based on Plaintiff's allegations (accepted as true), the *Ex parte Young* exception is inapplicable, and Eleventh Amendment immunity bars Plaintiff's action against Defendants in their official capacities.  The court will therefore grant the Motion to the extent it seeks dismissal of this Complaint on this basis.

## C. Pleading Deficiencies

Defendants further seek dismissal of Plaintiff's claims against them for failure to state a claim.  The court considers same to the extent this action is brought against the unidentified Department employees named as Defendants.

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. CONST. AMEND. XIV § 1.  "Procedural due process ensures that the government employs fair procedures when it seeks to deprive an individual of liberty or property."  *Amador v. Mnuchin*, 476 F. Supp. 3d 125, 148 (D. Md. 2020) (citing *Matthews v. Eldridge*, 424 U.S. 319, 332 (1976)).  "The Due Process Clause does not constitute a catch-all provision that provides a remedy whenever a state actor causes harm."  *Evans v. Chalmers*, 703 F.3d 636, 647 n.2 (4th Cir. 2012). "In order to claim entitlement

12

to the protections of the due process clause—either substantive or procedural—a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest, and that he has been deprived of that protected interest by some form of state action." *Stone v. Univ. of Maryland Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) (citations omitted)); *see Bailey-El v. Housing Authority of Balt. City*, 686 F. App'x 228, 229 (4th Cir. 2017) ("[T]he first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty."). "Unless there has been a 'deprivation' by 'state action,' the question of what process is required and whether any provided could be adequate in the particular factual context is irrelevant, for the constitutional right to 'due process' is simply not implicated." *Stone*, 855 F.2d at 172.

"A plaintiff alleging a procedural due process violation must allege facts sufficient to show that he or she was deprived of a constitutionally cognizable interest in life, liberty, or property by 'some form of state action,' and that the procedures employed by the state were constitutionally inadequate." *McArthur v. Brabrand*, 610 F. Supp. 3d 822, 843 (E.D. Va. 2022) (quoting *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013)); *see Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015) ("To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law."). Relevant here, the Fourth Circuit recently opined that, to establish a procedural due process violation based on the denial of food-stamp benefits, a plaintiff must show that he "had a property interest in [his] food-stamp benefits and was deprived of that interest without due process of law." *Hedgepeth v. Nash Cnty.*, No. 24-1638, 2025 WL 1303953, at *6 (4th Cir. May 6, 2025) (quoting *Tri Cnty. Paving, Inc. v. Ashe Cnty.*, 281 F.3d 430, 436 (4th Cir. 2002)).

Plaintiff fails to allege facts that, even accepted as true, adequately demonstrate that the state employed constitutionally inadequate procedures to deprive him of a life, liberty, or property

interest.  The Fourth Circuit's decision in *Holman v. Block* is instructive on this point.  823 F.2d

56, 58–59 (4th Cir. 1987) (footnotes omitted).  In *Holman*, the Fourth Circuit addressed, *inter alia*,

the following argument:

> On appeal the Holmans rely solely on their contention that the interruption of their benefits was in violation of constitutional due process. Briefly stated, appellants argue that the statutory language of the Food Stamp Act creates a continuing entitlement to benefits that amounts to a constitutionally protected property interest. In appellant's view, food stamp recipients cannot be deprived of that property interest, even by automatic expiration of benefits, unless there is first a pre-deprivation notice and an administrative hearing similar to those required in *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 105 S. Ct. 1487, 84 L.Ed.2d 494 (1985) and *Goldberg v. Kelly,* 397 U.S. 254, 90 S. Ct. 1011, 25 L.Ed.2d 287 (1970). . . .
>
> The district court impliedly accepted the Holmans' central contention that the statutory entitlement to benefits under the Food Stamp Act creates a continuing property interest that extends through one certification period to another. The court, thereby, focused its inquiry upon the adequacy of the certification interview as an opportunity to be heard. Although we are in complete agreement with the result reached by the district court, we conclude that the extent of the property interest created by the Food Stamp Act is much more limited than the court assumed.

*Id.*  It continued its analysis by discussing the Sixth Circuit's holding in *Banks v. Block,* 700 F.2d

292 (6th Cir. 1983), and finding the analysis therein persuasive.  The *Holman* court continued:

> In *Banks v. Block,* 700 F.2d 292 (6th Cir. 1983), the Sixth Circuit conducted a thorough and detailed analysis of the property interests embodied in the Food Stamp Program as amended by Congress in 1977. Citing both the statutory language and the legislative history of the certification amendments, the Sixth Circuit concluded that "a household has no protectable property interest in the continuous entitlement to food stamps beyond the expiration of its certification period." *Banks,* 700 F.2d at 297. Although the *Banks* court recognized the recipient's right to reapply for new certification periods, it characterized the anticipated receipt of benefits beyond the certification period as "an unprotected unilateral expectation." *Id.* at 296. The court thereby effectively distinguished the due process rights of food stamp recipients from those individuals in

14

> cases such as *Goldberg, supra,* who received welfare benefits unlimited by any statutory duration period.
>
> We find the Sixth Circuit's analysis persuasive. We are likewise convinced that Congress intended the statutory entitlement created by the amended Food Stamp Act and, by extension, the property interest of the recipients to be of a limited nature. It follows, therefore, that the three week interruption in the Holman's benefits was not in violation of their due process right because they had no protected interest in the continuous receipt of food stamps. Simply stated, the question in this appeal is not whether the process accorded appellants before the normal expiration of their benefits was adequate but whether any process at all was mandated. We conclude that none was required.

*Holman*, 823 F.2d at 59 (footnotes omitted).

In its opinion just this past year, the Fourth Circuit discussed its holding in *Holman*, explaining that it had "adopted the Sixth Circuit's analysis in *Banks v. Block* and held that food-stamp recipients have 'no protected interest in the continuous receipt of food stamps.'" *Hedgepeth v. Nash Cnty.*, No. 24-1638, 2025 WL 1303953, at *6 (4th Cir. May 6, 2025) (quoting *Holman*, 823 F.2d at 59); *see Olavarria v. Jones*, No. 5:19-CV-162-FL, 2020 WL 7407315, at *6 (E.D.N.C. Dec. 17, 2020), *aff'd,* 848 F. App'x 138 (4th Cir. 2021) (discussing same).  Where the plaintiff claimed that her "benefits were reduced when she was recertified for a new period of benefits," the determination "[was] directly controlled by *Holman*." *Hedgepeth*, 2025 WL 1303953, at *7 (4th Cir. May 6, 2025).  The plaintiff thus "had 'no protected interest in the continuous receipt of food stamps,' . . . and no constitutional right to a hearing before the new certification period." *Id.* (quoting *Holman*, 823 F.2d at 59).

For these same reasons, Plaintiff here fails to allege a protected interest in the continuous receipt of his SNAP benefits beyond the assigned period, meaning beyond expiration of the recertification period. *See Holman*, 823 F.2d at 59, *supra*.  Nor does he allege any other facts upon which the court may reasonably or plausibly infer some protected interest that might fall outside

the Fourth Circuit's controlling authority outlined above. Therefore, Plaintiff fails to state a claim that Defendants deprived him of a constitutionally cognizable interest due to constitutionally inadequate procedures. *See McArthur*, 610 F. Supp. 3d at 843, *supra*.

Further still, Plaintiff's allegations, even if they did suffice to raise or assert a protected interest, fail to identify any action or inaction by the individual Department employees (here, the unidentified Defendants) to deprive him of his procedural due process rights.

In view of the foregoing, Plaintiff fails to allege plausibly that the unidentified Defendant employees individually violated his procedural due process rights under the Fourteenth Amendment.

## IV.    CONCLUSION

For the reasons set forth herein, by separate order, the Motion (ECF No. 24) will be granted.[10]

February 19, 2026                          /S/_____
                                           Julie R. Rubin
                                           United States District Judge

---

[10] A dismissal for a defect in subject matter jurisdiction "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits." *Goldman v. Brink*, 41 F.4th 366, 369 (4th Cir. 2022); *see also Albert v. Lierman*, 152 F.4th 554, 564 n.9 (4th Cir. 2025) (noting that dismissals on the basis of sovereign immunity "should normally be without prejudice") (citation omitted). Further, the court declines to dismiss Plaintiff's claim against Defendants in their individual capacities with prejudice. *See Adbul-Mumit v. Alexandria Hyundai, LLC*, 896 F.3d 278, 292 (4th Cir. 2018) (stating that "the nature of dismissal" is left to "the sound discretion of the district court").